**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ELAINE GUTIERREZ,

                        Plaintiff,

v.

TAXI CLUB MANAGEMENT, INC., EVGENY
"GENE" FREIDMAN, in his individual and
professional capacities and ANDREEA DUMITRU
PARCALABOIU, in her individual and
professional capacities,

                        Defendants.

-----------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Elaine Gutierrez ("Ms. Gutierrez" or "Plaintiff"), by and through her undersigned counsel, Wigdor LLP, as and for her Complaint in this action against Defendants Taxi Club Management ("TCM" or the "Company"), Evgeny "Gene" Freidman ("Mr. Freidman") and Andreea Dumitru Parcalaboiu ("Ms. Parcalaboiu") (together, "Defendants"), hereby states and alleges as follows:

**PRELIMINARY STATEMENT**

1. Gene Freidman, New York's so-called "Taxi King," who is believed to own nearly 900 New York City taxi medallions and hundreds more nationwide, royally misbehaved through his relentless sexual harassment of Plaintiff Elaine Gutierrez, his hardworking former Accounts Payable Manager and Chief Executive Assistant.

2. Specifically, Mr. Freidman, founder and Chief Executive Officer ("CEO") of Defendant Taxi Club Management, subjected Ms. Gutierrez to a constant barrage of unwanted and sexually harassing comments during her time as his assistant. This included constant comments regarding Ms. Gutierrez's breasts ("**Oh, your big boobs**," and "**Did you see her**

**boobs?**"), incessant unwanted sexual advances ("**I know you want me**," "**You know you like it**," and "**She says 'no' but we know what 'no' means**"), sexual and gender-based harassment over email ("**My bottom bitch**," "**U so hot**" and "**I luv u!**") and attempts to use thin excuses to call her into meetings with him just so he could ogle and stare at her ("**If I tell you to come [to a meetings], so what if it's just because I want to look at you?**").

3. When she refused to acquiesce to his demands, complained and demanded he stop, telling her boss that "everything [is] in writing," Freidman instructed Defendant Parcalaboiu, TCM's Chief Financial Officer ("CFO"), to fire her. The justification given for the sudden termination of Ms. Gutierrez was, incredibly, blatantly retaliatory: her purported failure to **"shut up and do what [she] is told."**

4. Ms. Gutierrez, by filing this lawsuit, seeks redress for the heinous and unlawful conduct committed against her.

5. Ms. Gutierrez seeks declaratory, injunctive and equitable relief, as well as monetary damages, to redress TCM's, Mr. Freidman's and Ms. Parcalaboiu's unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq.* and the New York City Human Rights Law, New York Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE REQUIREMENTS

8. Ms. Gutierrez filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on September 30, 2016, on the basis of gender in violation of Title VII.

9. On December 22, 2016, the EEOC issued a Notice of Right to Sue ("Right to Sue") to Ms. Gutierrez. This Complaint is being filed within 90 days of receipt of the Right to Sue.

10. Within 10 days of the filing of this Complaint, a copy of this Complaint will be served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

11. Any and all other known administrative prerequisites have been met.

## PARTIES

12. Plaintiff Gutierrez is a female resident of New York City. At all relevant times, Ms. Gutierrez worked for TCM in its Long Island City, New York location as its Accounts Payable Manager, and as Defendant Freidman's Chief Executive Assistant. At all relevant times, Ms. Gutierrez fell within the definition of a "person" and/or an "employee" under all applicable statutes.

13. Taxi Club Management, Inc. is one of the largest taxi fleet operators in the United States. TCM is a domestic corporation incorporated in New York and organized under the laws

of the State of New York, with a principal place of business within this District. At all relevant times, TCM was an "employer" within the meaning of all applicable statutes.

14. Defendant Evgeny A. Freidman is the founder and CEO of TCM. In his capacity as CEO, Freidman participated directly in and/or aided and abetted the unlawful discrimination against Ms. Gutierrez. Upon information and belief, Mr. Freidman resides in New York, New York.

15. Defendant Andreea Dumitru Parcalaboiu is the CFO of TCM. In her capacity as CFO, Ms. Parcalaboiu participated directly in and/or aided and abetted the unlawful discrimination against Ms. Gutierrez. Upon information and belief, Ms. Parcalaboiu resides in New York, New York.

## FACTUAL ALLEGATIONS

### I. Ms. Gutierrez Joins TCM and Is Almost Immediately Subjected to Sexual Harassment and Gender Discrimination

16. In or around September 2015, Ms. Gutierrez joined TCM as an Accounts Payable Manager and Mr. Freidman's Chief Executive Assistant.

17. Throughout her employment, Ms. Gutierrez consistently received positive feedback on her work, including a performance-based raise in her salary in March 2016, after having been there for six months.

18. Unfortunately, also throughout her employment, Ms. Gutierrez had to suffer through constant and egregious sexual harassment by Mr. Freidman. The sexually harassing conduct by Mr. Freidman included, but was in no way limited to, the following:

- Commenting at nearly every meeting about Ms. Gutierrez's breasts, often in the presence of others, including: **"Oh, your big boobs,"** or **"Get your big boobs out of my face,"** and even commenting to other men in the room: **"Did you see her boobs?"** and **"Do you know Elaine rubbed them big boobs on me?"** (which never happened);

4

- Asking her to give him hugs, and when she would resist his advances and object to the harassing behavior, degradingly saying, **"I know you want me,"** or **"You know you like it,"** or **"She says 'no,' but we know what 'no' means,"** or **"How come every time that I ask you for something you don't listen to me- everybody listens to me!"**;

- Derogatorily commenting on her body and appearance when Ms. Gutierrez would oppose his sexually harassing behavior, including: **"Oh I don't want you anyway – you gained weight,"** or **"Elaine gained weight, she got fat, look at them boobs"**;

- Harassing Ms. Gutierrez over email, including by calling her a **"bottom bitch,"** which is a term for a prostitute who sits atop the hierarchy of prostitutes working for a pimp, and by telling her, **"U so hot!!"** and **"I luv u!"**;

- Using thin excuses to call her into meetings with him, just so he could ogle and stare at her, which he even admitted to doing after Ms. Gutierrez complained about how these "meetings" were preventing her from finishing her work. In response to one such objection, Mr. Freidman said: **"If I tell you to come [to a meeting], what if it's just because I want to look at you?"** and **"Just do what I say, and ask nothing"**;

- Telling other male TCM employees and associates, **"Can you find a guy for Elaine?"**; and

- Attempting to convince her to remain in the office with him alone after work hours, and even trying to entice her by offering her dinner paid for by him.

19. Ms. Gutierrez physically and verbally resisted Mr. Freidman's sexual harassment and advances, telling him repeatedly to "stop," and that his behavior was "embarrassing," but the behavior continued anyway.

20. She even complained to Andreea Dumitru Parcalaboiu, CFO and a practicing attorney, after almost every episode of harassment, but the complaints fell on deaf ears.

21. In fact, rather than help, Ms. Parcalaboiu told her, **"You get paid, so just deal with it,"** or **"Just ignore him."**

22. When Ms. Gutierrez reminded Ms. Parcalaboiu that she was "not paid to be sexually harassed," and begged her to help her by talking to Mr. Freidman, Ms. Parcalaboiu coldly told her, **"If you don't like it, then leave."**

23. Ms. Gutierrez also complained to a manager named Desiree, who said she would speak with Mr. Freidman, but who shockingly reported back that he told her Ms. Gutierrez was "always rubbing her boobs on him," and "always showing [him] her boobs" (which was not true).

II. **Ms. Gutierrez Forcefully Warns Mr. Freidman to Stop Sexually Harassing Her, and Within Days Is Terminated in Retaliation for Her Protected Complaints**

24. On or around August 12, 2016, during a meeting in which Mr. Freidman's sexually harassing conduct towards Ms. Gutierrez was even more heinous than usual, Ms. Gutierrez forcefully objected to his behavior, and warned him that, **"You call me fat, always talk about my boobs, but you need to stop,"** and that **"Everything [is] in writing."** This was an obvious reference to the large amount of written evidence that backs up and shows the relentless sexual harassment that he has committed against her.

25. Upon hearing this, rather than apologize to Ms. Gutierrez or assure her that he would stop behaving this way towards her, Mr. Freidman ordered Ms. Gutierrez to "Deal with Andreea," making it clear that Ms. Gutierrez was no longer welcome to work with him because she had stood up for herself and demanded an end to his sexual harassment.

26. Days later, on or around August 17, 2016, Ms. Gutierrez was abruptly told by Ms. Parcalaboiu that her employment was being terminated because **"Gene doesn't want you here anymore,"** supposedly because he felt that she **"ask[s] too many questions, and do[es]n't shut up and do what you are told."**

6

27.  This was an obvious reference to Ms. Gutierrez's many complaints of sexual harassment and other unlawful conduct, and direct evidence that she was being terminated for her protected activity.

28.  The unlawful conduct committed against Ms. Gutierrez by Mr. Freidman is an apparent continuation of his history and standard practice of engaging in and being accused of various illegal behavior (as reported in the media), including:

- Admitting to physical violence against his wife;[1]

- Being found by a Federal judge to have attempted to evade his obligations to creditors by shifting assets to "off-shore" accounts;[2]

- Failing to pay wages owed to taxi cab drivers working for him, causing the New York State Attorney General's Office to require that he agree to open up his business's books and records to an independent monitor;[3]

- Owing millions of dollar in back taxes;[4] and

- Being accused by business partners of committing fraud and misappropriation.[5]

---

[1] See Rebecca Rosenberg, *Taxi King of New York Admits He Slammed Young Wife Against Wall*, N.Y. Post (Aug. 13, 2015), http://nypost.com/2015/08/13/taxi-king-of-new-york-admits-he-slammed-young-wife-against-wall.

[2] See Rey Mashayekhi, *Taxi King Found to Have Evaded Lenders Via Offshore Trusts; Gene Freidman Moved More Than $60M in Real Estate Overseas, Judge Rules*, The Real Deal (Jan. 14, 2016), http://therealdeal.com/2016/01/14/taxi-king-found-to-have-evaded-lenders-via-offshore-trusts.

[3] See Anthony Noto, *Schneiderman: 'Taxi King' Needs Help Watching His Throne*, New York Business Journal, (Apr. 16, 2016), http://www.bizjournals.com/newyork/news/2016/04/19/schneiderman-taxi-king-needs-help-watching-his.html.

[4] See Dan Rivoli, *Exclusive: Taxi tycoon Evgeny Freidman owes $13M in taxes, NYC blasted for doing nothing about it,* NY Daily News (Aug. 29, 2016), http://www.nydailynews.com/new-york/taxi-king-owes-13m-taxes-nyc-article-1.2769154.

[5] See Ken Kurson*, Derailed by Uber, Deposed New York Taxi King Gets Sued in Chicago*, Observer (May 16, 2016), http://observer.com/2016/05/derailed-by-uber-deposed-new-york-taxi-king-gets-sued-in-chicago/.

## **FIRST CAUSE OF ACTION**
**(Harassment and Discrimination in Violation of Title VII)**
*Against Defendant TCM*

29. Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

30. Defendant TCM has discriminated against Plaintiff on the basis of her gender in violation of Title VII by subjecting Plaintiff to disparate treatment based upon her gender, including, but not limited to, subjecting her to sexual harassment, a hostile work environment and ultimately terminating her employment.

31. As a direct and proximate result of Defendant TCM's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief, in addition to reasonable attorneys' fees and costs.

32. As a direct and proximate result of Defendant TCM's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

33. Defendant TCM's unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
**(Retaliation in Violation of Title VII)**
*Against Defendant TCM*

34.   Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs, as though fully set forth herein.

35.   By the actions described above, among others, Defendant TCM retaliated against Plaintiff for her engagement in protected activities, including, but not limited to, complaining about and opposing Defendant's discrimination against Plaintiff on the basis of her gender. Defendant's retaliatory conduct includes, but is not limited to, the unlawful termination of Plaintiff's employment.

36.   As a direct and proximate result of Defendant TCM's unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of damages, to the greatest extent permitted by law, in addition to reasonable attorneys' fees and costs.

37.   As a direct and proximate result of Defendant TCM's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

38.   Defendant TCM's unlawful and discriminatory actions constitute knowing, malicious, willful, wanton and reckless violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against Defendants TCM and Mr. Freidman*

39. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs, as though fully set forth herein.

40. Defendants TCM and Mr. Freidman have discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to disparate treatment based upon her gender, including, but not limited to, subjecting her to sexual harassment, a hostile work environment and ultimately terminating her employment.

41. As a direct and proximate result of Defendants TCM's and Mr. Freidman's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages, in addition to reasonable attorneys' fees and costs.

42. As a direct and proximate result of Defendants TCM's and Mr. Freidman's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

43. Defendants TCM's and Mr. Freidman's unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)
*Against Defendants TCM and Mr. Freidman*

44. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs, as though fully set forth herein.

45. By the actions described above, among others, Defendants TCM and Mr. Freidman retaliated against Plaintiff for her engagement in protected activities, including, but not limited to, complaining about and opposing Defendants' discrimination against Plaintiff on the basis of her gender. Defendants' retaliatory conduct includes, but is not limited to, the unlawful termination of Plaintiff's employment.

46. As a direct and proximate result of Defendants TCM's and Mr. Freidman's unlawful and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of damages, to the greatest extent permitted by law, in addition to reasonable attorneys' fees and costs.

47. As a direct and proximate result of Defendant TCM's and Mr. Freidman's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

48. Defendants TCM's and Mr. Freidman's unlawful and discriminatory actions constitute knowing, malicious, willful, wanton and reckless violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Aiding and Abetting Violations of the NYCHRL)
*Against Defendants Mr. Freidman and Ms. Parcalaboiu*

49. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs, as though fully set forth herein.

50. Defendants Mr. Freidman and Ms. Parcalaboiu knowingly or recklessly aided and abetted the unlawful employment practices and discrimination against Plaintiff in violation of the NYCHRL.

51. As a direct and proximate result of Defendants Mr. Freidman's and Ms. Parcalaboiu's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief, in addition to reasonable attorneys' fees and costs.

52. As a direct and proximate result of Defendants Mr. Freidman's and Ms. Parcalaboiu's unlawful retaliatory and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

53. Defendants Mr. Freidman's and Ms. Parcalaboiu's unlawful actions constitute malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Discrimination in Violation of New York State Human Rights Law)
*Against Defendants TCM and Mr. Freidman*

54.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs, as though fully set forth herein.

55.     By the actions described above, among others, Defendants TCM and Mr. Freidman have discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by subjecting Plaintiff to disparate treatment based upon her gender, including, but not limited to, subjecting her to sexual harassment, a hostile work environment and ultimately terminating her employment.

56.     As a direct and proximate result of the unlawful and discriminatory conduct of Defendants TCM and Mr. Freidman, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief, in addition to reasonable attorneys' fees and costs.

57.     As a direct and proximate result of Defendant TCM's and Mr. Freidman's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the New York State Human Rights Law)
*Against Defendants TCM and Mr. Freidman*

58.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs, as though fully set forth herein.

13

59. Defendants TCM and Mr. Freidman retaliated against Plaintiff for her engagement in protected activities, including, but not limited to, complaining about and opposing Defendants' discrimination against Plaintiff on the basis of her gender. Defendants' retaliatory conduct includes, but is not limited to, the unlawful termination of Plaintiff's employment.

60. As a direct and proximate result of Defendants TCM's and Mr. Freidman's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including, but not limited to, loss of past and future income, compensation and benefits for which Plaintiff is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

61. As a direct and proximate result of Defendant TCM's and Mr. Freidman's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### EIGHTH CAUSE OF ACTION
**(Aiding and Abetting Violations of the NYSHRL)**
*Against Defendants Mr. Freidman and Ms. Parcalaboiu*

62. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation as contained in each of the preceding paragraphs, as though fully set forth herein.

63. Defendants Mr. Freidman and Ms. Parcalaboiu knowingly or recklessly aided and abetted the unlawful employment practices, discrimination, harassment and retaliation against Plaintiff alleged herein, in violation of the NYSHRL.

64. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of monetary damages, in addition to reasonable attorneys' fees and costs.

65. As a direct and proximate result of Defendant Mr. Freidman's and Ms. Parcalaboiu's unlawful retaliatory and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York;

B. An award of damages, including back pay, front pay, liquidated damages, compensatory damages, and/or punitive damages, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages incurred as a result of Defendants' unlawful actions;

C. An award of damages to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

D. An award of damages to be determined at trial, to compensate Plaintiff for physical injuries, emotional distress and/or mental anguish incurred as a result of Defendants' unlawful actions;

E.    An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law;

F.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct; and

G.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: January 30, 2017
       New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
       Lawrence M. Pearson
       Tanvir H. Rahman

85 Fifth Avenue
New York, NY  10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
lpearson@wigdorlaw.com
trahman@wigdorlaw.com

*Counsel for Plaintiff*